```
                IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF PENNSYLVANIA


STACEY A. WEEKS                    :          CIVIL ACTION
                                   :
          v.                       :
                                   :
UNITED STATES OF AMERICA,          :          NO. 25-187
et al.                             :
```

MEMORANDUM

Bartle, J.                                                                      November 19, 2025

        Plaintiff Stacey A. Weeks, as the Administratrix of the Estate of Tahiem Weeks-Cook and in her own right, has sued the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346 and 2680(h). She has also sued seven special agents of the FBI[1] for constitutional infractions under <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971). Plaintiff claims that defendants are liable for the death of her son, who was shot during an attempt to effectuate his arrest pursuant to an arrest warrant, and for failing to provide him with prompt medical assistance at the scene.

        The amended complaint sometimes uses the same number for different counts. The seven counts against the United

---

[1] The individual defendants are Edward Conway, Benjamin Paris, Michael Bailey, Travis Nissley, George Stevenson, Jr., Robert Lythgoe, and Ryan Jones.

States are captioned: (1) assault and battery; (2) negligence to properly execute the arrest warrant; (3) negligence for failure to provide prompt medical attention; (4) intentional infliction of emotional distress; (5) negligent infliction of emotional distress; (6) wrongful death – intentional/negligent conduct; and (7) (wrongfully numbered as Count V) survival action.

The four counts against the individual defendants are denominated: (1) wrongful death – deliberate indifference; (2) survival action; (3) Bivens claim against defendant FBI Special Agent Edward Conway; and (4) Bivens claim against individual FBI agents.

Before the court is the motion of the United States to dismiss all but the assault and battery count against it under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and, alternatively, under Rule 12(b)(6) for failure to state a claim. The individual defendants have moved to dismiss the four counts against them under Rule 12(b)(6).

I.

Rule 12(b)(1) governs jurisdictional challenges to a complaint. To determine the correct standard of review, the court must first evaluate whether the defendant is submitting a facial or a factual challenge. Const. Party of Pa. v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014). The United States makes a

factual challenge here under Rule 12(b)(1) to this court's subject matter jurisdiction to the extent it argues that plaintiff failed to exhaust her administrative remedies for the wrongful death claim.  See id. at 358.  When a party raises a factual challenge, the court may consider evidence outside the pleadings to determine whether the plaintiff has satisfied its burden of proof that jurisdiction exists.  Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016).

Plaintiff otherwise makes a facial challenge based on the allegations in the amended complaint.  See Const. Party of Pa., 757 F.3d at 358.  In this situation, "'the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.'"  Id. (quoting In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012)).

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court likewise must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the light most favorable to the plaintiff.  See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); see also Umland v. PLANCO Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008).  When there is a document "integral to or explicitly relied upon in the

complaint," it may also be considered as there is no concern of lack of notice to the plaintiff. See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (quotation marks omitted)).  The court may also take judicial notice of matters of public record. See id.

The complaint must plead more than "labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007).  It must plead more than "a formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555, 557) (internal quotations and alterations omitted).  Instead, it must recite sufficient factual content to state a claim that is plausible on its face. Id.

II.

The amended complaint contains the following well-pleaded facts, taken as true for present purposes.  On August 4, 2023, the individual defendants, who as noted above are all special agents of the FBI, attempted to execute an arrest warrant for Tahiem Weeks-Cook for two Hobbs Act robberies. Between 11:45 a.m. and 12:05 p.m., Agents Paris, Bailey, Nissley, Stevenson, and Jones arrived and parked their white, unmarked van on the 1600 block of West Venango Street in

-4-

Philadelphia, near an apartment at 1631 West Venango Street where it was understood Weeks-Comb was staying. The agents were dressed in "military-style camouflage" uniforms and armed with automatic weapons.

Meanwhile, Agent Lythgoe parked a dark-colored, unmarked van on the same block. Agent Conway, who wore a dark shirt or jacket and blue jeans, was a passenger in the van. All agents remained in their respective vehicles and did not surround the apartment in which Weeks-Cook was staying.

Sometime between 12:00 and 12:30 p.m., Weeks-Cook left the 1631 West Venango Street apartment and looked at a phone in his hand. At that point, Agents Paris, Bailey, Nissley, and Stevenson, holding their weapons, exited the parked white van. Upon seeing them, Weeks-Cook fled westbound on the Venango Street sidewalk with these agents in pursuit. During the chase, Weeks-Cook dropped his cell phone. He was unarmed, and his hands were visibly empty.

Agent Lythgoe at the same time began driving the dark-colored van westbound on Venango Street past Weeks-Cook and the pursuing agents. The van's side door was "wide open[,] facing the sidewalk" where Weeks-Cook was running. Agent Lythgoe moved the dark-colored van closer to the sidewalk and slowed down. Agent Conway, with a gun in his hand, leaned out of the van opposite Weeks-Cook.

Agent Lythgoe stopped the van close to the sidewalk near 17th and Venango Streets. Weeks-Cook turned toward the open door of the van. Agent Conway shot Weeks-Cook—once in the neck and once in the upper abdomen—at point-blank range.

Weeks-Cook fell to the ground, struggled to get up, and began crawling toward the back of the dark-colored van. Agent Stevenson approached Weeks-Cook and pointed his automatic weapon at him. Shortly thereafter, Weeks-Cook collapsed.

Weeks-Cook was then searched by Agents Paris, Bailey, Nissley, and Stevenson. Approximately eight minutes after he was shot by Agent Conway, he was transported to Temple University Hospital, where he underwent multiple surgeries and had his leg amputated. Weeks-Cook died two days later on August 6, 2023. His death was determined by the Philadelphia Medical Examiner to be a homicide caused by "gunshot wounds (2) to the torso" inflicted by Agent Conway.

### III.

All seven claims against the United States are brought under the FTCA. This statute waives the sovereign immunity of the United States for personal injury or death arising out of the negligent or wrongful act or omission of a government employee acting within the scope of his employment. 28 U.S.C. § 2679. It provides the exclusive remedy for money damages for such an act or omission. Id. Liability attaches only under the

circumstance where there would be liability under the law of the state where the act or omission occurred if the United States were a private person.  28 U.S.C. § 1346(b)(1).  The FTCA does not provide a claim for relief where the government employee is alleged to have violated the Constitution of the United States.  28 U.S.C. § 2679(b)(2).

A plaintiff must first present all her claims to the appropriate federal agency.  28 U.S.C. § 2675(a).  This is a jurisdictional requirement.  Shelton v. Bledsoe, 775 F.3d 554, 569 (3d Cir. 2015).  Plaintiff here brings this lawsuit not only as the Administratrix of the Estate of her son, Tahiem Weeks-Cook, but also in her own right as his mother.  Plaintiff alleges that she exhausted her administrative remedies for all her claims when she notified the Department of Justice and the FBI General Counsel of them.  Am. Compl. at ¶3.

The Pennsylvania Wrongful Death Act, 42 Pa. Cons. Stat. § 8301 (2024) and the Pennsylvania Survival Act, 42 Pa. Cons. Stat § 8302 (2024), both provide for the recovery of damages where death of an individual occurs as a result of the wrongful or negligent act of another.  The Wrongful Death Act allows for the recovery of damages by certain relatives of the deceased, including the deceased's mother.  See Burns v. Goldberg, 210 F.2d 646, 647 n.1 (3d Cir. 1954).  In contrast, the Survival Act allows an administratrix or executrix of the

-7-

deceased's estate to recover damages suffered by the deceased. See id.  The Wrongful Death Act and Survival Act provide separate causes of action.  Id. at 650; see also Tulewicz v. Se. Pa. Transp. Auth., 606 A.2d 427, 431 (Pa. 1992).

A review of the claims filed by plaintiff Stacey Weeks with the FBI[2] shows that she only submitted claims as the Administratrix of the Estate of Weeks-Cook.  The Form 95, which was used for that purpose, lists "Stacey A. Weeks, Administratrix" as the claimant and is signed by plaintiff's counsel as "Attorney for Estate of Tahiem Week-Cook [sic]." Nowhere does the form contain the description of any injuries to or any statement of claims of the plaintiff in her own right as the mother of Tahiem Weeks-Cook.  Because Plaintiff did not include her own claims, she is precluded from bringing an FTCA lawsuit with claims under the Pennsylvania Wrongful Death Act. See Gland v. United States, No. 03-CV-1697, 2003 WL 23094911, at *4 (E.D. Pa. Dec. 16, 2003).  The court lacks jurisdiction over any claim by the plaintiff in her own right under the Pennsylvania Wrongful Death Act.  See id.

The United States makes a facial challenge to subject matter jurisdiction on the remaining counts except for the

---

[2]   The United States alleges that plaintiff filed her administrative claim with the Department of Justice.  The sole Form 95 provided to the court was filed by plaintiff with the FBI.

assault and battery claim.  It relies on § 2680(a) of the FTCA, which provides immunity for any claim:

> based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of . . . an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

The United States argues that this exception extends to all the FTCA claims alleged except for the one for assault and battery. To the extent the United States is correct, this court lacks subject matter jurisdiction.  Xi v. Haugen, 68 F.4th 824, 838 (3d Cir. 2023).

The Supreme Court has construed discretionary acts to mean those acts which involve "an element of judgment or choice."  United States v. Gaubert, 499 U.S. 315, 322 (1991) (quoting Berkovitz v. United States, 486 U.S. 531, 536 (1988)). It is "the nature of the conduct, rather than the status of the actor that governs whether the exception applies."  Gaubert, 499 U.S. at 322 (quoting United States v. Varig Airlines, 467 U.S. 797, 813 (1984) (citation modified)).  The Court explained that the purpose of this exception is to prevent judicial "second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort."  Id. at 323 (quoting Varig, 467 U.S. at 814

(citation modified)). The exception protects only "governmental actions and decisions based on considerations of public policy." Id. at 323 (quoting Berkovitz, 486 U.S. at 537).

The court finds Shuler v. United States, 531 F.3d 930 (D.C. Cir. 2008) to be instructive.[3] There, a confidential informant sued the Government under the FTCA. Shuler, 531 F.3d at 932. He alleged that he was providing information about the whereabouts of a drug trafficking boss and asked that the boss not be arrested immediately as that would blow the informant's cover and put him in danger. Id. The FBI nonetheless arrested the boss immediately after the informant disclosed his whereabouts. Id. Thereafter reluctant to provide additional assistance to the Government, the informant was persuaded to continue to do so only after an FBI agent gave assurances that the FBI would protect him. Id. Several weeks later he was shot and as a result was permanently paralyzed. Id.

The Court of Appeals affirmed the dismissal of the action on the ground that the FBI's decision when to arrest the drug boss was the exercise of its lawful discretion under the FTCA. Id. at 934. It also held that whether and how to protect an informant was within the sound discretion of the Government

---

[3]    Judge Brett M. Kavanaugh, now Justice Kavanaugh, sat on the panel and joined in the opinion.

officials.  Id. at 934-36.  These decisions were matters of public policy not subject to second-guessing by the courts.  Id.

This pending action is analogous to Shuler.  The decision of FBI agents on how and when to effect an arrest warrant for Weeks-Cook, a suspect accused of two Hobbs Act robberies, was a matter of discretion.  Such a decision rests on a myriad of factors often involving split-second life and death consequences.  While the agents, of course, are trained to make arrests, their choice and judgment based on the totality of the circumstances are paramount.  None of the parties has called to the court's attention any specific statute or regulation outlining the exact circumstances and procedures for every arrest.  One size cannot fit all.  Executing arrest warrants is a matter of public policy involving the safety of the community and the advancement of justice and is not a matter for judicial second-guessing under the FTCA.

Likewise, the FBI's rendering of medical assistance in the highly charged atmosphere after a shooting of a suspect in the course of executing an arrest warrant is a matter of discretion.  How quickly this happens depends on the circumstances, including the apparent nature and seriousness of the arrestee's condition, the need to protect the safety of the agents and others, and the speed with which necessary medical personnel can arrive on the scene.  Even if the FBI agents were

negligent, a dubious proposition based on allegations in the complaint, their decision involves a matter of choice or judgment and thus is protected from liability.  Gaubert, 499 U.S. at 322-23.  Again, it is not a matter for judicial second-guessing.

The acts and omissions alleged here for negligence in executing the arrest warrant and negligence in failing to provide prompt medical attention entail the performance of discretionary functions or duties under the FTCA.  To the extent that any of plaintiff's claims encompass or are predicated on these allegations, there has been no waiver of sovereign immunity.  See Xi, 68 F.4th at 838; 28 U.S.C. § 2680(a).  Consequently, the court need not decide whether the claims based on these acts or omissions would be viable under Pennsylvania law if the acts or omissions were not discretionary.

The court will therefore dismiss Counts II and III alleging negligence to properly execute the arrest warrant and for failure to provide prompt medical attention.  These counts are based in the discretionary acts recited above.  The United States, however, is not entitled to the dismissal of Counts IV and V for intentional and negligent infliction of emotional distress and Count VII under the Pennsylvania Survival Act (misnumbered as Count V) to the extent they are predicated on the assault and battery alleged in Count I.  To the extent that

Counts IV, V, and VII are based in Count II and Count III, they will be dismissed for lack of subject matter jurisdiction.

IV.

Plaintiff has also sued the seven FBI agent defendants under Bivens.  One claim alleges FBI Agent Conway used excessive force by shooting Weeks-Cook in violation of his rights under the Fourth Amendment.  Another is against all seven FBI agents and alleges that they violated Weeks-Cook's Fourth Amendment rights by failing to "safely arrest" him.  As an integral part of these claims, plaintiff asserts wrongful death and survival claims against the individual defendants.

The Supreme Court in Bivens held that a person had an implied constitutional claim for damages against federal narcotics agents who were alleged to have violated his rights under the Fourth Amendment when they searched his home, arrested and manacled him without a warrant and without probable cause, and threatened his family.  Bivens, supra at 389-90, 397.

The Supreme Court in two later cases extended Bivens. In Davis v. Passman, 442 U.S. 228 (1979), it held that a staff member fired by a congressman had an implied constitutional claim for damages against him for discrimination on the basis of sex.  This discrimination claim, the Court held, was based on the equal protection of the laws, which is encompassed within

the due process clause of the Fifth Amendment.  Passman, 442 U.S. at 234-36; Bolling v. Sharpe, 347 U.S. 497, 498-99 (1954).

Finally, the Supreme Court in Carlson v. Green, 446 U.S. 14 (1980), upheld the right of the estate of a deceased inmate to sue prison officials for personal injuries from which he died.  The Court found that plaintiff had a viable claim grounded in decedent's due process, equal protection, and Eighth Amendment rights.  Carlson, 446 U.S. at 16-18.

The road extending Bivens stopped there.  Since Carlson, the Court has rejected all efforts to add more implied causes of action under the Constitution.  Egbert v. Boule, 596 U.S. 482, 490-91 (2022).  Doing so is now a disfavored judicial activity.  Id. at 491.

The plaintiff asserts claims grounded on the use of excessive force.  It is noteworthy that since Carlson, the Supreme Court has refused to create an implied constitutional claim for damages where it was alleged that a border agent used excessive force when he shot and killed a fifteen-year-old Mexican national across the border.  Hernandez v. Mesa, 589 U.S. 93 (2020).  Likewise, in Egbert, the Court rejected a Bivens claim of a government informant who was a United States citizen and who averred that a border agent used excessive force and caused him physical injury and retaliated against him in

violation of the Fourth and First Amendments.  596 U.S. at 489-90, 493-94.

In deciding on whether to extend Bivens, Egbert has reduced a court's inquiry to one question — "whether there is any reason to think that Congress might be better equipped to create a damages remedy" than the judiciary.  Id. at 492.  If the answer is "yes," no extension of Bivens may take place.  See id. at 492-93.  Our Court of Appeals has recently read Egbert to say that "unless a case is indistinguishable from Bivens, Davis, or Carlson, a damages remedy may be created by Congress, but not by the courts."  Fisher v. Hollingsworth, 115 F.4th 197, 205 (3d Cir. 2024).

The claims of plaintiff against the agents are not indistinguishable from the claims in Bivens even though they are based on the Fourth Amendment.  It is necessary to point out only one material difference.  In Bivens, narcotics agents made the seizure and arrest without the benefit of a warrant.  See 403 U.S. at 389.  Here, in contrast, the FBI agents had an arrest warrant for Weeks-Cook.  There is reason to think that Congress might be better equipped in this instance than the courts to create a damages remedy.

If this court allows plaintiff to proceed against the seven defendant FBI agents, it would be extending Bivens beyond anything authorized by the Supreme Court.  This it may not do.

Accordingly, the court will not reach the issue of qualified immunity.  See Pearson v. Callahan, 555 U.S. 223 (2009).  The motion of the individual defendants to dismiss the claims against them will be granted on the ground that plaintiff has not stated a claim upon which relief can be granted.

V.

Plaintiff, in her opposing briefs, asks permission to file a second amended complaint if the court is inclined to rule against her.  Plaintiff does not attach a proposed pleading.  In any event, any amendment, in light of this court's rulings, would be futile.  See Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000).  Plaintiff cannot plead her way around the immunity of the United States under the FTCA or around the strict limitations against the judicial creation of remedies pursuant to Bivens and its progeny.